# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                  Plaintiff,

v.

JASON OLSON,

                  Defendant.

Case No. 24-CV-612-JPS

**ORDER**

### 1. INTRODUCTION

Plaintiff Hartford Life and Accident Insurance Company ("Plaintiff") alleges that Defendant Jason Olson ("Defendant") has wrongfully retained over $100,000 in disability benefits due to an administrative error and has continued to do so throughout the course of this litigation. ECF No. 1 at 4–5. On September 5, 2025, Plaintiff moved for summary judgment. ECF No. 25. Defendant did not respond to the motion. For the reasons stated below, the motion for summary judgment will be granted in part and denied in part.

### 2. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016) (citing FED. R. CIV. P. 56(a) and *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014)). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

## 3.  RELEVANT FACTS[1]

Defendant was employed by the City of Madison starting on or around November 16, 1998. ECF No. 24 at 1 (citing ECF No. 24-2 at 3). He was a qualified participant in the group life insurance plan, "Basic Dependent Life, Basic Term Life, Supplemental Term Life, Basic Accidental Death and Dismemberment, Supplemental Accidental Death and Dismemberment" (the "Plan") sponsored by the City of Madison. *Id.* (citing ECF No. 24-2 at 3). Benefits of the Plan are insured by a group life insurance policy, Policy No. GL-033731 ("the Policy"), issued by Plaintiff. *Id.* at 2 (citing ECF No. 24-4 at 2–3). The Policy includes the Policy document, the Plan certificate booklet, and any riders issued in connection with said booklet. *Id.* (citing ECF No. 24-4 at 3 and ECF No. 24-5 at 7). One of the amendatory riders, effective October 1, 2015, provides:

---

[1]The Court draws this summary from Plaintiff's statement of fact, ECF No. 24, which Defendant did not oppose. The Court will accordingly treat Plaintiff's statement of facts as undisputed for purposes of their motion. FED. R. CIV. P. 26(e)(2); CIV. L.R. 56(b)(4). Similarly, Defendant was served with but did not respond to Plaintiff's requests for admission. ECF No. 24-1 at 3. Per Federal Rule of Civil Procedure 36(a), a failure to respond to a request for an admission within 30 days will result in the matter being deemed conclusively established as admitted. Here, Defendant has failed to respond to any of the requests for admission and has otherwise not responded to this motion for summary judgment. Thus, all the facts set forth by Plaintiff will be adopted accordingly.

**Occupational Death and Permanent or Total Disability Benefit**: *When is the Occupational Death and Permanent or Total Disability Benefit payable?*

We will pay an Occupational Death or Permanent and Total Disability Benefit if You:

1) suffer a Loss of Life as a direct result of bodily injury or occupational disease which arises out of and in the course of Your employment with the Employer; or

2) become Permanently and Totally Disabled as a direct result of bodily injury or occupational disease which arises out of and in the course of Your employment with the Employer.

Once satisfactory Proof of Loss of Your Occupational Death or Permanent and Total Disability is received, We will pay You or Your beneficiary an amount equal to the lesser of:

    1) 1.5 times Your annual Earnings; or

    2) $300,000.

**Permanent and Total Disability** means due to Your Disability, You are eligible for and receiving occupational disability benefits under the applicable provisions of Wisconsin Statutes.

No benefit will be payable for an Occupational Death or Permanent and Total Disability which results directly or indirectly from:

1) bodily injury or disease which does not arise out of and in the course of Your employment with the Employer;

2) any intentionally self-inflicted injury, suicide or attempted suicide, whether sane or insane;

3) war or act of war, whether war is declared or not;

4) participation in a riot;

5) commission of an assault or felony;

6) disease of the body or mental illness or as a result medical or surgical treatment or diagnosis of such disease of the body or mental illness;

7) any infection, except a pus-forming infection of an accidental cut or wound; or

8) taking of poison or asphyxiation form [sic] inhaling gas whether voluntary or involuntary.

ECF No. 24-5 at 55. In all other respects, the certificate remains the same. ECF No. 24 at 2 (citation omitted).

The State of Wisconsin determines whether to approve claims made under the above Permanent and Total Disability ("PTD") provision of the Policy, and where approved, the State of Wisconsin notifies Plaintiff to administer the appropriate payment. *Id.* at 2–3 (citing ECF No. 24-4 at 3). On November 13, 2021, Defendant stopped working for the City of Madison and subsequently applied for benefits under the PTD provision. *Id.* at 3 (citing ECF No. 24-2 at 4).

Defendant's employer provided Defendant's salary information to Plaintiff so that Plaintiff could pay Defendant on his claim for PTD benefits. *Id.* (citing ECF No. 24-4 at 3). In January 2023, the claim was approved, triggering Plaintiff to pay Defendant a total of $148,785.70 based on the salary information Plaintiff received. *Id*. (citations omitted); *see also* ECF Nos. 24-2 at 4 and 24-6 at 2–3. In November 2023, Plaintiff received notice that Defendant's employer had under-reported Defendant's earnings, warranting an additional, one-time payment of $14,546.84 to satisfy Defendant's PTD claim. *Id*. (citing ECF No. 24-4 at 3); *see also* ECF Nos. 24-2 at 5 and 24-7 at 2.

On January 16, 2024, Defendant returned a call from Plaintiff, confirming his direct deposit banking information in order to receive the

payment. *Id.* (citing ECF No. 24-4 at 3). That same day, Plaintiff issued a confirmation letter. *Id.* (citing ECF No. 24-7 at 2); *see also* ECF No. 24-2 at 5. Defendant, therefore, expected to be paid only $14,546.84 in order to satisfy his claim. ECF No. 24 at 4 (citing ECF No. 24-2 at 5).

However, Plaintiff's payment system accidentally triggered a payment covering the period from March 2023 to January 2024, resulting in an overpayment of $145,486.40.[2] *Id.* at 4 (citing ECF No. 24-4 at 3–4); *see also* No. 24-2 at 5. On five different occasions in February 2024, Plaintiff left voicemails for Defendant to inform him of the overpayment. *Id.* (citing ECF No. 24-2 at 5). On February 12, 2024, Plaintiff sent a letter to Defendant at his Fox Lake, Wisconsin residence, requesting repayment of the overpayment. *Id.* (citing ECF No. 24-2 at 6); *see also* ECF No. 24-8 at 2–3. A similar letter went out to that same address on February 28, 2024. ECF No. 24 at 5 (citing ECF No. 24-2 at 7); *see also* ECF No. 24-9 at 2–3. Because Plaintiff failed to respond to the requests to admit that he received those letters, the Court finds that those letters were, in fact, received by Defendant. ECF No. 24-2 at 6–7; *see supra* note 1.

Plaintiff discovered that Defendant had a new address in Beaver Dam, Wisconsin. ECF No. 24 at 5 (citing ECF No. 24-4 at 4). In March 2024, Plaintiff obtained the services of the Dodge County Sheriff's Office to personally serve Defendant at his new Beaver Dam address with a copy of the reimbursement demand letter. *Id.* (citing ECF No. 24-4 at 4). However, that attempt was unsuccessful. *Id.* (citing ECF No. 24-4 at 4). Plaintiff's

---

[2]The overpayment was equal to eleven times the $14,546.84 payment, a reflection of the eleven months that passed in that time. ECF No. 24-4 at 3.

subsequent attempt to have Defendant's employer contact Defendant was also unsuccessful. *Id*. (citing ECF No. 24-4 at 4).

In May 2025, Plaintiff, by way of subpoena of Defendant's credit union records, confirmed that, on February 3, 2024, a payment of $160,015.24 was directly deposited into Defendant's account from Plaintiff's funds. *Id.* at 7 (citing ECF No. 24-3 at 41).[3] Defendant has retained possession of the $145,486.40 overpayment since February 2024, and to date has not paid any of the overpayment back to Plaintiff. *Id.* at 5 (citing ECF Nos. 24-2 at 7–8 and 24-4 at 4). Defendant, by failing to respond to Plaintiff's request for admissions, admits that at no point was he entitled under the Plan or the Policy to retain the PTD payment. *Id.* (citing ECF No. 24-2 at 7).

As a result, Plaintiff filed this lawsuit in May 2024. ECF No. 1. Since then, Plaintiff succeeded in tracking down Plaintiff to a different address in Fox Lake, Wisconsin, enabling Plaintiff to properly serve him the summons and complaint in November 2024.[4] ECF No. 24 at 6 (citing ECF 24-1 at 2). The parties have exchanged several emails regarding this lawsuit, and all relevant documents have been served on Defendant at this Fox Lake address and at his personal email address. *Id*. at 6 (citing ECF No. 24-1 at 2). Defendant answered the complaint, ECF No. 11, and participated with Plaintiff in submitting a discovery plan, ECF No. 12, but has not otherwise defended this action.

---

[3]Notably, the bank records further show that between February 8, 2024 and April 30, 2025, Defendant withdrew approximately $60,000 from his account at multiple casinos. ECF No. 24 at 7 (citing ECF No. 24-3 at 9, 23, and 32). Additionally, on June 27, 2024, Defendant wired $50,524.31 out of his account. *Id.* (citing ECF No. 24-3 at 29).

[4]Due to the difficulties tracking down Defendant, the Court granted an extension as to service. *See* Aug. 15, 2024 docket entry.

## 4. ANALYSIS

Plaintiff seeks summary judgment based on these facts. ECF No. 25. However, the Court must turn first to the matter of jurisdiction before examining the merits here. *See GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995) ("That the parties have not contested, nor the district court considered jurisdiction does not impede our inquiry. We are required to satisfy ourselves not only of our own jurisdiction, but also the jurisdiction of the district court.") (citing *Commercial Nat'l Bank v. Demos*, 18 F.3d 485, 487 (7th Cir. 1994))).

### 4.1 Subject Matter Jurisdiction

Plaintiff suggests that the Court has jurisdiction over this case because it raises a federal question, citing 28 U.S.C. § 2201. ECF No. 1 at 1. However, that section—known as the Declaratory Judgment Act—does not constitute an independent cause of action for purposes of assessing jurisdiction. *Wisconsin v. Ho-Chunk Nation*, 512 F. 3d 921, 935 (7th Cir. 2008) (citing *Gould, Inc.*, 65 F.3d at 619). To the contrary, it only provides an additional form of relief and as such, it requires an "independent basis for jurisdiction," such as diversity jurisdiction or federal question. *Id*. (citing same).

As such, the Court evaluates whether diversity jurisdiction exists here. 28 U.S.C. § 1332. Here, Defendant is alleged to be a citizen of the State of Wisconsin, and Plaintiff a citizen in the State of Connecticut, its place of incorporation and principal place of business. ECF No. 1 at 1. No facts suggest otherwise. Accordingly, since the parties are citizens of different states, the diversity of citizenship requirement is met. The amount in controversy is met too, as the amount disputed more than doubles the $75,000 threshold amount. *Id*. As such, the Court has subject matter

jurisdiction over this case and will analyze the merits using Wisconsin law. *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."); *see also* ECF No. 25-1 at 10–12 (Plaintiff arguing that it is entitled to judgment under Wisconsin law, which Defendant has not disputed); *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

### 4.2 Appropriateness of Claims Presented and Relief Sought

Plaintiff alleges that Defendant was unjustly enriched when he retained its accidental overpayment on February 3, 2024. For relief, Plaintiff seeks a judgment or declaration of unjust enrichment as to the overpayment; a money judgment, including prejudgment interest, in the amount of the overpayment; the imposition of a constructive trust as an alternative to a money judgment; and an order enjoining Defendant from further diminishing the funds in his Summit Credit Union account. ECF No. 1 at 5–8; ECF No. 25-1 at 14 (noting that the constructive trust and the money judgment are sought "[a]lternatively"); ECF No. 27 at 2–3.

Although Plaintiff's request for a declaratory judgment is within the Court's subject matter jurisdiction, *see supra* Section 4.1, the Court finds that this form of relief is unnecessary and duplicative of the other relief sought. Plaintiff has not explained why it requires *both* a finding on summary judgment that Defendant was unjustly enriched *and* a declaratory judgment stating as much, nor has it explained why a declaratory judgment is necessary now, when Defendant already has the mistakenly-deposited funds. *See Layman v. City of Peoria, Illinois*, 352 F. Supp. 3d 874, 877 (C.D. Ill. 2018) ("If traditional remedies are sufficient . . . courts may properly dismiss

Page 8 of 20
Case 2:24-cv-00612-JPS     Filed 11/25/25     Page 8 of 20     Document 28

a declaratory judgment claim, and if the alleged damage has already occurred, declaratory judgment is not appropriate." (citing *Field v. Housing Auth. of Cook Cnty.*, No. 17-cv-02044, 2018 WL 3831513, at *10 (N.D. Ill. Aug. 13, 2018) and *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168 (7th Cir. 1969))). For these reasons, Plaintiff's declaratory judgment claim will be dismissed without prejudice.

### 4.3 Merits

As discussed below, Plaintiff shows that Defendant has been unjustly enriched by $145,486.40. However, Plaintiff has failed to show that a constructive trust is the appropriate remedy. At the same time, Plaintiff has established that a judgment would be an appropriate remedy, but before ordering the Clerk of Court to issue a judgment, the Court will require further briefing on Plaintiff's entitlement to and the amount of prejudgment interest. If Plaintiff fails to submit a supplemental memorandum within 30 days or such submission is insufficient, the Court will order entry of judgment that does not include prejudgment interest. Lastly, the Court declines to impose the injunction that Plaintiff seeks.

#### 4.3.1 Unjust Enrichment

In Wisconsin, unjust enrichment requires proof of three elements: "(1) a benefit conferred on the defendant by the plaintiff, (2) appreciation by the defendant of the . . . benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (quoting *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975) and citing *Ramsey v. Ellis*, 484 N.W.2d 331, 333 (Wis. 1992)) (footnote omitted). Here, Plaintiff transferred $160,015.24 into Defendant's Summit Credit Union

Bank Account, $145,486.40 of which Defendant was not entitled to but nonetheless accepted and retained. Defendant—through his admissions, including the receipt of Plaintiff's demand letters, correspondence in connection with this lawsuit, and his failure to respond to requests for admissions, *see supra* note 1—has since acknowledged this was a mistake. To be sure, it would be inequitable to permit Defendant to keep the deposit because he has admitted he is not so entitled. As discussed below, Defendant has offered no showing of any kind to justify retention of the monies. Indeed, it is inequitable for Defendant to retain the funds, even though it was the result of Plaintiff's mistake. *See General Elec. Cap. Corp. v. Cent. Bank*, 49 F.3d 280, 285 (7th Cir. 1995) (citing *Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Emps. v. Danielson*, 128 N.W.2d 9 (Wis. 1964)) (noting that Wisconsin law allows party paying money by mistake of fact to recover it in an action for money had and received). Plaintiff, therefore, has demonstrated all three elements of an unjust enrichment claim by undisputed evidence.

Defendant, by not responding to this suit, has accordingly offered no defense that might apply, such as detrimental-reliance or the discharge-for-value qualification. In any event, the Court would not be inclined to find that either apply. A defense of detrimental reliance would require a showing that Defendant "honestly believed, after receipt of the money, that [h]e was entitled to keep it" and relied on this belief to his detriment. *Danielson*, 128 N.W.2d at 11–12. Here, Defendant's attempts to evade service, his withdrawals of the monies at casinos, and his refusal to participate in this lawsuit belie the notion that he believed he was entitled to the monies. Instead, the facts here demonstrate that Defendant has, for over a year, kept the funds out of Plaintiff's reach so as to repurpose the

funds to his own ends. *See supra* note 3. Similarly, the discharge-for-value defense would not apply, as Defendant is not a creditor as to the value of the overpayment. *Cent. Bank*, 49 F.3d at 285 (suggesting that "judicial consciences in Wisconsin would not be troubled by permitting persons entitled [anyway] to money," such as creditors, "to keep it" (citing *Ramsey*, 484 N.W.2d at 333 and *Gross Common Carrier v. Quick-N-Clean Corp.*, 132 N.W.2d 576 (Wis. 1965))).

Of course, Plaintiff has also altogether failed to oppose the motion for summary judgment. "Failure to comply with the briefing requirements in Civil L. R. 7(a)-(b) [which set a deadline for any opposition brief] may result in sanctions up to and including the Court denying or granting the motion." CIV. L.R. 7(d). Given the lack of any issue of material fact together with Defendant's failure to oppose the motion for summary judgment, the Court is obliged to grant this portion of Plaintiff's motion and find that Defendant was unjustly enriched.

### 4.3.2 Constructive Trust

In finding that there was unjust enrichment, Plaintiff has only established that it is entitled to a remedy; it is not automatically entitled to the remedy that is a constructive trust. *Tikalsky v. Friedman*, 928 N.W.2d 502, ¶¶ 21–22 (Wis. 2019) (discussing a constructive trust as a remedy and not a cause of action). A constructive trust is warranted only where a party "has either obtained or holds the legal title to property which he ought not in equity and in good conscience beneficially enjoy" due to "actual or constructive fraud, duress, abuse of confidence, mistake, commission of a wrong, or by any form of unconscionable conduct." *Id*. at ¶ 21 (quoting *Gorski v. Gorski*, 262 N.W.2d 120 (Wis. 1978), and collecting additional cases). "Once a constructive trust exists, it travels with the property to

which it attaches. So, as long as the plaintiff can trace the property from one person to the next, he may have this remedy . . . ." *Id.* at ¶ 24.

In this case, Plaintiff has demonstrated that Defendant obtained the overpayment as the result of a mistake and was thereby unjustly enriched. Plaintiff has even traced the funds to a particular account, as required by case law. *Mooney v. Illinois Educ. Ass'n*, 942 F.3d 368, 371 (7th Cir. 2019) (finding that bringing a claim against the "union's treasury generally" as opposed to an "identifiable fund or asset" was an insufficient basis to impose a constructive trust).

However, a constructive trust is nonetheless inappropriate as there remains one lingering problem. Namely, Plaintiff must not only "point to an identifiable fund," but it must also "show that [its] fees specifically are still in [defendant's] possession." *Id.* (citing *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142–46 (2016)). That is not the case here. Given the numerous withdrawals at various casinos totaling approximately $60,000 and the withdrawal in excess of $50,000, *see supra* note 3, the strong inference is that Plaintiff spent the monies at those casinos. Plaintiff does not argue and did not ask Defendant to admit that he moved the money into a different account, or used the monies to purchase other tangible items, such that it would still be in his possession and traceable. *See generally* ECF Nos. 24-2, 25-1. Additionally, Defendant's bank records reveal a dramatic drop since his receipt of Plaintiff's funds. In April 2024,[5] his checking account consisted of $129,600.09. ECF No. 24-3 at 32. A

---

[5]The Court would have used the amount as of February 29, 2024, but Plaintiff has blocked out that figure. The April figure, shown as the "prior balance" on the May statement, is the first figure that is not redacted, so the Court uses that figure.

month later, the amount had decreased to $94,684.02. *Id*. By July 2024, the amount was down to $29,703.45. *Id*. at 23. By September 2024, the account had only $2,369.14. *Id*. at 19. Notably, the figure had been slightly rebuilt to $3,702.81 by February 2025.[6] *Id*. at 8.

In other words, the inference on summary judgment in the nonmoving party's favor is that the bulk of the monies are gone and no longer in Defendant's possession. Plaintiff's own request for an injunction to prevent Defendant from diminishing the monies further evinces this likely reality and the inappropriateness of imposing a constructive trust here. *See Montanile*, 577 U.S. at 145–46 (noting that "where a person wrongfully dispose[d] of the property of another but the property cannot be traced into any product, the other . . . cannot enforce a constructive trust or lien upon any part of the wrongdoer's property") (quoting RESTATEMENT (FIRST) OF RESTITUTION § 215(1) (emphasis omitted) and citing *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213–214 (2002))). Because Plaintiff has not shown that the funds are still in Defendant's account or otherwise in Defendant's possession in another form, the Court cannot impose a constructive trust at this juncture. *See Mooney*, 942 F.3d at 371.

Moreover, even assuming that the few funds that remain in Defendant's account are traceable to Hartford, the fact that those funds have been slightly rebuilt since September 2024, along with the number of redacted transactions, reveals that the Hartford funds are comingled with Defendant's other monies. That is important because while some jurisdictions shift the burden of proving apportionment to the defendant,

---

[6] The February 2025 figure is the most recent figure the Court can discern due to the redactions.

Page 13 of 20
Case 2:24-cv-00612-JPS   Filed 11/25/25   Page 13 of 20   Document 28

Wisconsin does not. *Simonson v. McInvaille*, 166 N.W.2d 155, 159 (1969) (burden of identification of portion of fund remains on plaintiff); *In re Larson*, 206 B.R. 945, 947 (W.D. Wis. 1997) (citing *Simonson* with approval); Dale A. Oesterle, *Deficiencies of the Restitutionary Right to Trace Misappropriated Property in Equity and in UCC § 9-306*, 68 CORNELL L. REV. 172, 174 n.6 (1983) (comparing the *Simonson* rule as to burden of proof on apportionment to other jurisdictions). Plaintiff has not met this burden. For these reasons, the Court denies this portion of Plaintiff's motion and denies its request for a constructive trust.

### 4.3.3 Money Judgment

Plaintiff, in the alternative, requests that a judgment be entered against Defendant. As suggested above, a money judgment is appropriate here. *Mooney*, 942 F.3d at 371 (finding that the inability to show funds in defendant's possession relegates claimants to the "legal remedy" of recovering from the Defendant's "assets generally") (quoting *Montanile*, 557 U.S. at 658). Courts may set damages based on the affidavits submitted. *Brandon Apparel Grp. v. Pearson Props., Ltd.*, 634 N.W.2d 544, ¶ 20 (Wis. Ct. App. 2001) (citing *Midwest Devs. v. Goma Corp.*, 360 N.W.2d 554, 564 (Wis. Ct. App. 1984)). Indeed, in a case like this, where the amount of damages is alleged in the complaint and the defendant has failed to contest the amount, or otherwise engage in this litigation, the Court is not obligated to hold a hearing to make its determination. *Smith v. Golde*, 592 N.W.2d 287, 293 (Wis. Ct. App. 1999) (citing *Midwest Developers*, 360 N.W. 2d at 564). However, "damages must be proven with reasonable certainty." *Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 557 N.W.2d 67, 80 (Wis. Ct. App. 1998) (citing *Production Credit Ass'n of Madison v. Nowatzki*, 388 N.W.3d 550, 556 (Wis. 1979) and *Cutler Cranberry Co. v. Oakdale Elec. Coop.*, 254 N.W. 2d 234 (Wis.

1997)). Courts do not require "mathematical precision," but only evidence sufficient to "enable[] the jury to make a fair and reasonable approximation." *Mgmt. Comput. Servs.*, 557 N.W.2d at 80 (citing *Carlson v & Erickson Builders*, 529 N.W.2d 905, 914 (Wis. 2003)). In unjust enrichment cases, the measure of damages is limited to "the benefit conferred upon the defendant, not the plaintiff's loss." *Id*. at 79–80 (citing *Ramsey v. Ellis*, 484 N.W. 2d 331, 333 (Wis. 1992) and *Graf v. Neith Coop. Dairy Prods. Ass'n*, 257 N.W. 618, 620 (Wis. 1934)).

In this case, Plaintiff's loss and the benefit conferred on Defendant are identical. As stated earlier, according to a representative from Hartford insurance, Hartford's payment system, in February 2024, inadvertently "overpaid Jason Olson by $145,486.40." ECF No. 24-4 at 4. Bank records from that time confirm just that: that $160,015.24, rather than the $14,546.84 owed, was directly deposited into Defendant's account on February 3, 2024. ECF No. 24-3 at 41. Thus, the Court concludes, as a matter of law, that Defendant has been unjustly enriched by $145,486.40. The Court would enter judgment accordingly, but due to an issue that remains outstanding, as discussed *infra* 4.3.3.1, it will not do so at this time.

#### 4.3.3.1 Prejudgment Interest

"Whether to award prejudgment interest is a question of law." *Loehrke v. Wanta Builders, Inc.*, 445 N.W.2d 717, 722 (Wis. Ct. App. 1989) (citing *Murray v. Holiday Rambler, Inc.*, 265 N.W.2d 513, 529 (Wis. 1978)). Generally, "whether and how to award prejudgment interest lies with the discretion of the trial court." *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (citing *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 647 (7th Cir. 2016)).

> The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid

> immediately. It is designed to ensure that a party is fully compensated for its loss. . . . Consequently, prejudgment interest typically accrues from the date of loss or from the date on which the claim accrued.

*Am. Nat'l Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted). It is recoverable "only when damages are either liquidated or liquidable, that is, there is a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he or she owes." *Teff v. Unity Health Plans*, 666 N.W.2d 38, ¶ 43 (Wis. Ct. App. 2003) (citing *Johnson v. Pearson Agri-Sys., Inc.*, 250 N.W. 2d 127, 130 (Wis. 1984)). The rationale for this rule is that "if the amount of damages is either liquidated or determinable by reference to some objective standard, the defendant can avoid accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages." *Id*. (citing same).

Plaintiff cites no legal authority explaining why it is entitled to prejudgment interest and at what rate, nor when the asserted prejudgment interest began accruing. *See Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 501 N.W.2d 788, 802 (Wis. 1993) (noting that "when prejudgment interest should begin to accrue" would be an "issue" the court would need to address if it had decided to grant prejudgment interest). The Court here may eventually deem it appropriate to award prejudgment interest as Defendant has failed to simply tender the amount of the overpayment and has, indeed, admitted that he is not entitled to the overpayment. *See Teff*, 666 N.W.2d 38, 55 (Wis. Ct. App. 2003) (citing *Loehrke*, 445 N.W.2d at 722 (permitting prejudgment interest on the amount conceded at trial). However, due to Plaintiff's failure to file an adequate brief, the Court cannot determine whether prejudgment interest is appropriate, nor can it calculate

the amount of prejudgment interest, and the amount is likewise not readily ascertainable from the record.

Accordingly, the Court will defer ruling on Plaintiff's motion for summary judgment insofar as it requests an award of prejudgment interest. The Court will require the parties to confer and submit a supplemental memorandum detailing the legal basis for the prejudgment interest request, the proper rate of prejudgment interest, and a recommended calculation of the amount of prejudgment interest that should be awarded in this case. Plaintiff shall make a good faith effort to involve Defendant in the drafting of this memorandum and certify as much to the Court; if Defendant does not participate, Plaintiff may submit the memorandum unilaterally. This supplemental memorandum shall be filed within **thirty (30) days** of the date of this Order.

At this juncture, therefore, the Court will not order entry of judgment. *See Pace Commc'ns, Inc. v. Moonlight Design, Inc.*, 31 F.3d 587, 590–91 (7th Cir. 1994) (noting that "where a court intends to award prejudgment interest, its judgment is not final . . . until the amount of interest is calculated"); *Student Loan Mktg. Ass'n v. Lipman*, 45 F.3d 173, 175 (7th Cir. 1995) (noting that a district court judgment imposing prejudgment interest without calculating the amount may be considered final where "the uncalculated interest is free from dispute and is readily ascertainable from the record"). However, if no supplemental memorandum is filed within thirty (30) days, the Court will deny Plaintiff's motion as to an award of prejudgment interest and will order entry of judgment that does not include prejudgment interest.

### 4.3.4 Injunction

Lastly, Plaintiff asks the Court to "[e]njoin Defendant Jason Olson from removing, transferring, depleting, or otherwise diminishing the $145,486.40 overpayment Hartford deposited into his Summit Credit Union account." ECF No. 1 at 7, 8; ECF No. 25-1 at 11. To obtain a permanent injunction, Plaintiff must show that there is no adequate remedy at law and that irreparable harm will occur if the injunction does not issue. *Halter v. Wis. Interscholastic Athletic Assoc.*, 4 N.W.3d 573, ¶ 39 (Wis. Ct. App. 2024) (citing *Sunnyside Feed Co., Inc. v. City of Portage*, 588 N.W.2d 278, 283 (Wis. Ct. App. 1998) and *Werner v. A. L. Grootemaat & Sons, Inc.*, 259 N.W.2d 310, 314 (Wis. 1977)), *rev'd on other grounds,* 19 N.W.3d 58 (Wis. 2025)). Whereas a "showing of irreparable damage is not as critical where temporary injunction is sought," "substantial injury is a prerequisite to permanent injunctive relief." *Shearer v. Congdon*, 131 N.W. 2d 377, 381 (Wis. 1964). Finally, equitable considerations "must favor issuing the injunction." *Halter*, 4 N.W.3d ¶ 39 (quoting *Nettesheim v. S.G. New Age Prods., Inc.*, 702 N.W.2d 449, ¶ 21 (Wis. Ct. App. 2005)).

To begin, Plaintiff has once again offered no legal authority or argument in support of its request for a permanent injunction. *See generally* ECF Nos. 25-1 and 27. This alone is sufficient basis to deny the request. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . ." (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))).

In any event, permanent injunctive relief is inappropriate in this case. The Court acknowledges that Plaintiff has established Defendant has been unjustly enriched, but Plaintiff has a remedy at law: the money

Page 18 of 20
Case 2:24-cv-00612-JPS   Filed 11/25/25   Page 18 of 20   Document 28

judgment that will eventually issue. Of course, whether that remedy is adequate is unclear given the evidence showing not only sizable and numerous withdrawals, but also a checking account that is nearly entirely depleted. But if the money is nearly all gone, an injunction now will not likely prevent an injury. *Halter*, 4 N.W.3d ¶ 39 ("To obtain an injunction, a plaintiff must show a sufficient probability that future conduct of the defendant will violate a right of and will injure plaintiff." (quoting *Pure Milk Prods. Coop. v. Nat'l Farmers Org.*, 280 N.W. 2d 691, 700 (Wis. 1979)) (brackets omitted)).

For these reasons, the Court will not issue an injunction and will deny Plaintiff's motion for summary judgment insofar as it seeks this relief.

## 5. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. The Court finds that Defendant has been unjustly enriched by $145,486.40. However, the Court will defer ordering entry of a judgment to this effect until after the parties submit a supplemental memorandum regarding prejudgment interest in accordance with the instructions above. The Court declines to create a constructive trust or issue an injunction. Plaintiff's claim for a declaratory judgment will be dismissed without prejudice.

Accordingly,

**IT IS ORDERED** that Plaintiff Hartford Life and Accident Insurance Company's motion for summary judgment, ECF No. 25, be and the same is hereby **GRANTED** to the extent it finds Defendant liable for unjust enrichment in the amount of $145,486.40; to the extent that it seeks prejudgment interest, the Court **DEFERS** ruling pending the parties'

further submissions; and finally, the Court **DENIES** the motion to the extent it seeks an injunction and constructive trust;

**IT IS FURTHER ORDERED** that Plaintiff's claim for a declaratory judgment be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that the parties submit a supplemental memorandum regarding prejudgment interest in accordance with the instructions above within **thirty (30) days** of this Order; failure to timely do so will result in the entry of a judgment without prejudgment interest included.

Dated at Milwaukee, Wisconsin, this 25th day of November, 2025.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge